UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEENA M. JONES,<br><br>    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF THE<br>SOCIAL SECURITY ADMINISTRATION,<br><br>    Defendant. | Case No. ED CV 12-999-PJW<br><br>MEMORANDUM OPINION AND ORDER |

## I. INTRODUCTION

Plaintiff appeals a decision by Defendant Social Security Administration ("the Agency"), denying her application for Disability Insurance benefits ("DIB"). She claims that the Administrative Law Judge ("ALJ") erred when he discounted the opinions of her treating and examining doctors and concluded that she and her husband were not credible. For the reasons discussed below, the Court finds that the ALJ erred and remands the case to the Agency for an award of benefits.

## II. SUMMARY OF PROCEEDINGS

In November 2008, Plaintiff applied for DIB, claiming that she was disabled due to fibromyalgia, chronic fatigue syndrome, mitral valve prolapse, headaches, irritable bowel syndrome, hypothyroidism,

and memory problems. (Administrative Record ("AR") 20, 74, 132-35, 151.) Her application was denied initially and on reconsideration. She then requested and was granted a hearing before an ALJ. (AR 73-83, 85, 104-09.) On June 30, 2010, Plaintiff appeared with counsel and testified at the hearing. (AR 36-66.) On August 23, 2010, the ALJ issued a decision, finding that she was not disabled. (AR 20-25.) Plaintiff appealed to the Appeals Council, which denied review. (AR 1-3.) This appeal followed.

## III. DISCUSSION

### A. The Treating and Examining Doctors' Opinions

Plaintiff contends that the ALJ erred when he rejected the opinions of her treating and examining doctors. For the following reasons, the Court agrees.

Generally speaking, a treating doctor's opinion is entitled to deference. *Orn v. Astrue,* 495 F.3d 625, 631 (9th Cir. 2007); *see also Morgan v. Comm'r of Social Sec. Admin.,* 169 F.3d 595, 600 (9th Cir. 1999) (explaining that treating physician's opinion "is given deference because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'") (quoting *Sprague v. Bowen,* 812 F.2d 1226, 1230 (9th Cir. 1987)). Thus, all things being equal, a treating doctor's opinion regarding a claimant's condition should be given controlling weight. *Orn,* 495 F.3d at 631; *Embrey v. Bowen,* 849 F.2d 418, 421 (9th Cir. 1988). That being said, however, an ALJ is not required to simply accept a treating doctor's opinion. Where, as here, the opinion is contradicted by another doctor's opinion, the ALJ is empowered to reject the treating doctor's opinion for specific and legitimate reasons supported by substantial evidence in the record. *See Thomas*

2

v. *Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (quoting *Magallanes v. Bowen* 881 F.2d 747, 751 (9th Cir. 1989)); *Morgan*, 169 F.3d at 600. The opinions of examining doctors are also entitled to deference and, where contradicted by another doctor, may only be discounted for specific and legitimate reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

Plaintiff's treating endocrinologist, Dr. Stephen Damiani, diagnosed Plaintiff with fibromyalgia, chronic fatigue syndrome, Hashimoto's thyroiditis, peripheral neuropathy, and an autoimmune disease. (AR 655-62.) Plaintiff's treating infectious disease doctor, Dr. Ronald Kundargi, also diagnosed Plaintiff with fibromyalgia. (AR 642-47.) Both doctors believed that Plaintiff was too incapacitated to work due to her impairments. For example, they opined that she was unable to sit, stand, or, walk for more than one hour in an eight-hour day. (AR 645, 657.) Dr. Damiani believed that Plaintiff would miss more than three days of work per month; Dr. Kundargi thought she would miss at least two days per week. (AR 646, 661.) A third treating physician, Dr. Arvind Salwan, diagnosed Plaintiff with chronic fatigue syndrome and opined that she "has bruises due to balance issues and falling" and must "be on restricted driving, [i.e.,] only local and very short trips." (AR 623.)

The ALJ rejected the opinions of all three doctors on the grounds that their assessments "are egregiously accommodative, indulgent, and exaggerated and would have one believe that [Plaintiff] is a functionless valetudinarian, which is simply not established by clinical and diagnostic evidence." (AR 23.) This is not a specific or a legitimate reason to reject the doctors' opinions. In the first place, it is far too general. *See Embrey*, 849 F.2d at 421 ("To say

3

that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim."). General findings like these do not allow the parties or the Court to understand what the ALJ was basing his decision on and thus precludes meaningful review.

Second, the lack of objective medical evidence is not a legitimate reason for discounting the opinions of Plaintiff's treating doctors in this case because of the nature of her ailments. Fibromyalgia is a unique disease that "is diagnosed entirely on the basis of patients' reports of pain and other symptoms." *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004). As a result, the Ninth Circuit has held that an ALJ may not reject a treating doctor's fibromyalgia diagnosis merely because there is no objective evidence to support it. *See id.* at 594 ("The ALJ erred by effectively requiring objective evidence for a disease that eludes such measurement." (alteration and quotation marks omitted)). Similarly, chronic fatigue syndrome is defined as "'*self-reported* persistent or relapsing fatigue lasting six or more consecutive months,'" and is diagnosed by ruling out other possible illnesses. *See Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998) (quoting Centers for Disease Control, The Chronic Fatigue Syndrome: A Comprehensive Approach to its Definition and Study, 121 *Annals of Internal Medicine* 954 (1994)) (emphasis in original). Thus, the lack of clinical and diagnostic evidence supporting Plaintiff's diagnoses is not, by itself, a legitimate reason for rejecting the doctors' opinions.

Third, there is at least some objective evidence in the record supporting Dr. Damiani's and Dr. Kundargi's fibromyalgia diagnosis and supporting Dr. Damiani's and Dr. Salwan's chronic fatigue syndrome diagnosis. Dr. Kundargi noted in a Fibromyalgia Questionnaire that he filled out in connection with this case that "[a]ll pain trigger locations are extreme." (AR 643-44, 646.) Based on his findings, Dr. Kundargi concluded that Plaintiff met the American Rheumatological criteria for fibromyalgia. (AR 642.) For his part, Dr. Damiani stated in a Multiple Impairment Questionnaire that Plaintiff had pain all over her body, including her neck, shoulders, arms, hands, legs, and feet. (AR 655-56.) Further, with respect to chronic fatigue syndrome, Plaintiff manifested other common symptoms in addition to fatigue, such as headaches, low-grade fevers, and memory problems. (AR 297, 441, 648-53, 656.)

Dr. Damiani, who followed Plaintiff's progress for more than three-and-a-half years, referred her to various specialists and conducted extensive lab testing to rule out other possible illnesses. (AR 295-98, 304-24, 330-32, 550-51, 556, 559, 561-64, 568, 572, 576-78; *see* AR 587-88 (examining physician's note that other possible diagnoses had been considered and ruled out for Plaintiff's fibromyalgia and chronic fatigue syndrome).) The ALJ erred in not addressing Dr. Damiani's treatment. *See Reddick*, 157 F.3d at 726 (ALJ erred in rejecting treating doctor's diagnosis of chronic fatigue syndrome where the doctor "followed [the claimant's] progress for three and a half years, referred her to several specialists and conducted extensive lab testing to rule out other possible illnesses").

Finally, in addition to Dr. Damiani's and Dr. Kundargi's fibromyalgia diagnoses, examining physician Ratiner also diagnosed Plaintiff with fibromyalgia. (AR 584-88.) Dr. Ratiner based his opinion on a review of Plaintiff's records and on his own physical examination, which revealed "greater than 12 fibromyalgia tender points" in her neck and lower back. (AR 586.)

For these reasons, the Court rejects the ALJ's finding that the opinions of Dr. Damiani, Dr. Kundargi, and Dr. Salwan were not entitled to deference because they were not supported by the evidence.[1]

The Court also finds that the ALJ erred in rejecting Dr. Ratiner's opinion. Dr. Ratiner diagnosed Plaintiff with fibromyalgia, chronic fatigue syndrome, Hashimoto's thyroiditis, and peripheral neuropathy, and opined that, as a result of her impairments, she "[would] need frequent breaks from work and [would] likely have a lot of missed work days due to her symptoms . . . ." (AR 587-88.) The ALJ rejected this opinion on the grounds that it "was purchased by [Plaintiff's] representative to support the current litigation" and he was not a treating physician. (AR 23.)

An ALJ cannot reject an examining doctor's opinion on the basis that he was not a treating doctor. An examining doctor, by definition, is a doctor who does not treat the claimant. *See* 20 C.F.R. § 404.1502. Still, an ALJ *must* consider his or her opinion. *Lester*, 81 F.3d at 830; 20 C.F.R. § 404.1527. To the extent that the

---

[1] As to Dr. Damiani's opinion regarding Plaintiff's other impairments, there is clinical and diagnostic evidence supporting these diagnoses as well, including Plaintiff's treating neurologist's finding of peripheral neuropathy and ultrasound results suggesting Hashimoto's thyroiditis. (AR 548, 558, 592-99.)

ALJ rejected Dr. Ratiner's opinion because he believed that it was "purchased" by Plaintiff's attorney, that was also improper. *Batson v. Comm'r of Social Sec. Admin.*, 359 F.3d 1190, 1196 n.5 (9th Cir. 2004) (quoting *Lester*, 81 F.3d at 830). The fact that a claimant has paid a doctor for his services is not a valid reason for discounting that doctor's opinion. As is clear in these types of cases, all of the doctors are paid by one side or the other. Thus, excluding some opinions on the basis of payment makes no sense.

Finally, the Court notes that the ALJ's decision was not based on any of the current medical opinions in the record. Even the Agency doctors who reviewed the records determined that Plaintiff was restricted to sedentary work. Unhappy with those findings, the ALJ simply rejected them and relied on earlier findings by Agency doctors to support what appears to be his preordained conclusion that Plaintiff was capable of performing light work and, therefore, was not disabled. (AR 24.)

B.   The Credibility Determination

Plaintiff argues that the ALJ erred in concluding that she was not credible. For the following reasons, the Court finds that the ALJ erred in concluding that Plaintiff was not credible.

ALJs are tasked with judging the credibility of witnesses. In making these determinations, they may employ ordinary credibility evaluation techniques. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Where a claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce the symptoms alleged and there is no evidence of malingering, however, an ALJ can only reject the claimant's testimony for specific, clear, and

convincing reasons that are supported by substantial evidence in the record. *Id.* at 1283-84; *Thomas*, 278 F.3d at 959.

Plaintiff testified at the hearing that she stopped working in 2006 because her feet were dragging and she had weakness, dizziness, muscle twitching, and pain all over her body. (AR 40.) She claimed that she had intermittent pain in her neck and constant pain in her shoulders and lower back. She also complained about spasms and pain in her lower back and legs, dizziness, an inability to grip and grasp things with her hands, shortness of breath and poor memory. (AR 42, 44-45, 49-51, 53-54.) Plaintiff testified that she could only stand and walk for five to ten minutes at a time, sit for fifteen minutes at a time, and lift less than a gallon of milk. (AR 47, 56-58.) She also reported that, as a result of her limitations, she could not cook or perform other "normal household chores"; could not button her shirts; and could not sit at the computer for more than ten minutes at a time. (AR 42, 46-47.) According to Plaintiff, she was forced to sit with her feet up and a heating pad on her lower back for four hours a day. (AR 43.) In a written statement submitted with her disability application, Plaintiff claimed that she could not sit, squat, kneel, bend, or hold onto anything and that she had to take breaks between the time she finished showering and the time she began to dry her hair or get dressed. (AR 161-63.)

The ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are credible only to the extent that they are consistent with [the ALJ's residual functional capacity findings for Plaintiff]." (AR 24.) The ALJ did not give any reasons for this conclusion, though he noted in

his discussion of Plaintiff's testimony that she renewed her California driver's license in November 2007.  (AR 24.)

Insofar as the ALJ discounted Plaintiff's testimony solely because she renewed her California driver's license, this is not a clear and convincing reason.  It is not clear to the Court what connection renewing a driver's license has with Plaintiff's ability to work.  And it is not convincing because, as Plaintiff explained, her license was automatically renewed by DMV and sent to her in the mail.  (AR 60-61.)

Thus, the ALJ has not provided any valid reasons for discounting Plaintiff's testimony.  As such, this finding is reversed.[2]

C.  Reversal for an Award of Benefits Is Warranted

Because the ALJ failed to provide any valid reasons for rejecting Plaintiff's testimony and the doctors' opinions, the Court credits them as true.  See Benecke, 379 F.3d at 594.  Accepting Plaintiff's testimony of debilitating pain which limits her from performing even minimal tasks and combining that with the doctors' opinions that her condition would require her to miss multiple (three to eight) days of work each month, she is clearly disabled.  As such, there is nothing left for the Agency to do except calculate the amount of benefits owed to Plaintiff and award her those benefits.  See Benecke, 379 F.3d at 595; Nguyen v. Colvin, 2013 WL 4505253, at *16 (N.D. Cal. Aug. 13, 2013) (finding claimant disabled and remanding for award of benefits where ALJ improperly rejected treating doctor's opinion that claimant

---

[2] Plaintiff also complains that the ALJ failed to provide legitimate reasons for discounting her husband's testimony, which essentially mirrored hers.  The Court need not and does not address this issue because it is not necessary to resolve the case.

would miss more than four days of work per month); *Cash v. Astrue*, 2010 WL 2888973, at *5 (C.D. Cal. July 20, 2010) (finding, despite lack of vocational expert testimony on the issue, treating doctor's assessment that claimant would be absent from work three or more days per month "indicate[d] that a disability finding would be required," and remanding for benefits); *see also Brewes v. Comm'r of Social Sec. Admin.*, 682 F.3d 1157, 1165 (9th Cir. 2012) (finding claimant disabled and remand for award of benefits proper where treating doctors opined she would miss multiple days of work per month and vocational expert testified such a person was not employable); *Alcala v. Colvin*, 2013 WL 1620352, at *9 (C.D. Cal. Apr. 15, 2013) (remanding for award of benefits where claimant's treating doctors testified she would miss more than three days of work per month and vocational expert testified such a limitation would preclude past relevant work).

## IV. CONCLUSION

For the reasons set forth above, the Agency's decision is reversed and the case is remanded for an award of benefits.

IT IS SO ORDERED.

DATED: October 1, 2013.

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Social Security\JONES, 999\Memorandum Opinion and Order .wpd